791 P.2d 1032

**In the Matter of a Member of the State Bar of Arizona, Jesus Maria CARDENAS, Respondent.**

**No. SB–89–0052–D.**

Supreme Court of Arizona, In Banc.

April 19, 1990.

Jesus Maria Cardenas, Coolidge, pro se.

State Bar of Arizona by Harriet L. Turney, Chief Counsel, and Janet E. Barton, State Bar Counsel, Phoenix.

## OPINION

CAMERON, Justice.

### I. JURISDICTION

The Arizona State Bar Disciplinary Commission (Commission) recommends that Jesus Maria Cardenas be suspended from practice for six months and one day, ordered to pay $20,000 in restitution to his former client and $862 in costs to the State Bar of Arizona (Bar). We have jurisdiction pursuant to Rule 53(e), 17A A.R.S.Sup.Ct. Rules.

### II. QUESTIONS PRESENTED

We consider two questions on appeal:
1) Did the respondent violate the Arizona Rules of Professional Conduct?
2) Were the recommended sanctions appropriate?

### III. FACTS AND PROCEEDINGS

Respondent Jesus Maria Cardenas was admitted to the Bar in 1974 and practiced in Coolidge, Arizona. On 29 July 1986, a complaint was lodged with the Bar alleging facts which indicated that respondent had violated the Arizona Rules of Professional Conduct, Rule 42, Rules of the Supreme Court.

Respondent failed to answer the complaint, or otherwise file any pleadings. He did, however, appear in person without counsel before both the State Bar Hearing Committee (Committee) and the Commission. He admitted that he had been negligent and stated that the sum of $25,000 was a proper amount for restitution, although he did not know where he would get the money to pay that amount.

The Committee made the following findings of fact and conclusions of law.

### FINDINGS OF FACT

The Committee finds:
1. That Respondent agreed to represent Tim Harvey in a personal injury action even though Respondent had no prior experience in civil matters and, by his

own admission, was not knowledgeable in such suits.

2. Respondent thereafter failed to pursue Mr. Harvey's case with reasonable diligence and promptness or to control his workload so that the matter could be handled adequately.

3. Respondent failed to inform Mr. Harvey of settlement offers received from the Defendants, including a settlement offer in the amount of $20,000.00 or to consult with Mr. Harvey prior to rejecting the same.

4. Respondent failed to file a Motion to Set and Certificate of Readiness or to seek and obtain an additional extension of Mr. Harvey's case on the inactive calendar in a timely manner as ordered by the Court which resulted in the dismissal of Mr. Harvey's lawsuit.

5. Respondent failed to inform Mr. Harvey in a timely manner that the trial court had dismissed his lawsuit as a result of Respondent's failure to file a timely Motion to Set and Certificate of Readiness or request an additional continuance of the case on the inactive calendar.

6. Respondent failed to consult with Mr. Harvey and obtain his consent before pursuing an appeal of the trial court's dismissal of his lawsuit.

7. Respondent failed to pay the $25.00 filing fee required by Division Two of the Arizona Court of Appeals although Respondent was informed by the Court of Appeals that such a filing fee was required, which resulted in the dismissal of Respondent's appeal from the trial court's dismissal of Mr. Harvey's lawsuit.

## CONCLUSIONS OF LAW

1. Respondent failed to provide Mr. Harvey with competent representation, a violation of Rule 42, Rules of the Supreme Court, particularly ER 1.1;

2. Respondent failed to provide Mr. Harvey with accurate or complete information regarding his lawsuit, a violation of Rule 42, Rules of the Supreme Court, particularly ER 1.2;

3. Respondent failed to act with reasonable diligence and promptness throughout his representation of Mr. Harvey, a violation of Rule 42, Rules of the Supreme Court, particularly ER 1.3; and

4. Respondent failed to keep Mr. Harvey reasonably informed about the status of his lawsuit, a violation of Rule 42, Rules of the Supreme Court, particularly ER 1.4.

The Committee recommended that respondent be suspended for six months and pay restitution to the client in the amount of $25,000 with interest at the rate of 10% per annum from the date of this court's order. The respondent did not contest the findings of fact or conclusions of law.

The Commission affirmed the findings of fact and conclusions of law of the Committee, but rejected the sanctions recommended by the Committee. Instead, the Commission recommended suspension for six months and a day[1] and restitution in the amount of $20,000 with interest at 10% per annum accruing from 25 August 1985. We agree with the Commission's action in affirming the Committee's findings of fact and conclusions of law. We disagree, however, with both the Commission and the Committee as to the proper sanctions that should be imposed.

## IV. DID RESPONDENT VIOLATE THE ARIZONA RULES OF PROFESSIONAL CONDUCT?

Pursuant to Rule 42 of the Rules of the Supreme Court, we have, with some amendments, adopted the Model Rules of Professional Conduct of the American Bar Association approved by the House of Delegates on 2 August 1983.

We have also noted:

1. A suspension of six months or less allows the respondent to be readmitted upon the filing of an affidavit of compliance in lieu of an application for reinstatement. Rule 71(c), Rules of the Supreme Court. Suspension for six months and one day or more requires the respondent to petition for reinstatement and show proof of rehabilitation. Rule 71(d) and (g), Rules of the Supreme Court.

In determining whether discipline is appropriate, we are guided by certain well-defined principles: (1) this court is the ultimate trier of both fact and law in disciplinary proceedings; (2) disciplinary violations must be established by clear and convincing evidence; and (3) the recommendation of the State Bar is entitled to serious consideration.

*In re Ireland,* 146 Ariz. 340, 341, 706 P.2d 352, 353 (1985).

We believe the respondent violated the following Rules of Professional Conduct.

### A. *Competence*

ER 1.1 reads as follows:

A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

17A A.R.S.Sup.Ct.Rules, Rules of Professional Conduct, Rule 42, ER 1.1. A lawyer should no more take a case for which he is not competent than a medical doctor should perform surgery for which the doctor is unprepared to perform.

In the instant case, respondent made no effort to become competent. He made no effort to educate himself as to the matter nor did he consult with a lawyer of established competence. We believe respondent was not only not competent to take the case but remained not competent to handle the matter in violation of ER 1.1 of the Rules of Professional Conduct.

### B. *Scope of Representation*

ER 1.2(a) reads:

(a) A lawyer shall abide by a client's decisions concerning the objectives of representation, ... and shall consult with the client as to the means by which they are to be pursued. A lawyer shall abide by a client's decision whether to accept an offer of settlement of a matter.

Rule 42, ER 1.2(a).

The respondent took critical actions without informing his client. He failed to discuss with his client the dismissal by the superior court. He attempted to appeal the matter without consulting with his client. Most important, he failed to inform and consult with his client concerning the $20,000 settlement offer. We believe respondent violated ER 1.2(a) of the Rules of Professional Conduct.

### C. *Diligence*

The Committee also found that respondent violated ER 1.3 which reads:

A lawyer shall act with reasonable diligence and promptness in representing a client.

Rule 42, ER 1.3.

It is apparent that respondent did not use due diligence in representing his client's affairs. As the Committee noted, he failed to control his workload so that the matter could be properly handled. He failed to file a motion to set and certificate of readiness. He did not obtain an extension of time on the inactive calendar. On appeal, he failed to pay the $25 filing fee and the appeal was dismissed. We believe lack of due diligence has been shown in violation of ER 1.3 of the Rules of Professional Conduct.

### D. *Communication*

Finally, the Committee found that respondent violated ER 1.4 which reads:

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Rule 42, ER 1.4.

Respondent not only failed to keep his client informed, as required by ER 1.4, but did not explain the matter to his client so that decisions, vital to his client, could be intelligently made. We find respondent violated ER 1.4.

### V. SANCTIONS

■ The recommendation of the Committee as to suspension (six months) was objected to by Bar counsel. The Commission

agreed and recommended six months and one day. We disagree with both the Committee and the Commission.

The *Standards for Imposing Lawyer Sanctions* of the American Bar Association provide:

> In imposing a sanction after a finding of lawyer misconduct, a court should consider the following factors:
>
> (a) the duty violated;
>
> (b) the lawyer's mental state;
>
> (c) the actual or potential injury caused by the lawyer's misconduct; and
>
> (d) the existence of aggravating or mitigating factors.

ABA *Standards for Imposing Lawyer Sanctions*, Standard 3.0 (1986).

## A. *Disbarment or Suspension* [2]

The ABA *Standards* are persuasive but not mandatory. The *Standards* do provide a useful tool in determining the proper sanction to be applied. The standard that applies particularly to respondent is Standard 4.4:

> 4.4  Lack of Diligence
>
> Absent aggravating or mitigating circumstances, upon application of the factors set out in Standard 3.0, the following sanctions are generally appropriate in cases involving a failure to act with reasonable diligence and promptness in representing a client:
>
> 4.41  Disbarment is generally appropriate when:
>
> \*     \*     \*     \*     \*     \*
>
> (b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client ...

ABA *Standards*, Standard 4.4. The ABA *Standards* also provide:

> 4.42  Suspension is generally appropriate when:

(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client ...

ABA *Standards*, Standard 4.2.

The difference between Standard 4.41(b) (calling for disbarment), and Standard 4.42(a) (calling for suspension) is that 4.41(b) applies in cases of serious injury or potential serious injury while 4.42(a) is followed when the injury is not serious. We believe that a loss of $20,000 is a serious injury that calls for disbarment. If this was respondent's first transgression, we might be inclined to impose a sanction of suspension as recommended by the Committee and the Commission. Considering respondent's prior misconduct, as discussed below, together with the serious injury to the client in this case, we believe disbarment is warranted. *See* ABA *Standards*, Standard 4.41(b).

## B. *Aggravating Factors*

Respondent had previously been sanctioned for violating the Code of Professional Responsibility. Although the record before the court does not indicate the details of the prior violation, the uncontested statement of Bar counsel is helpful:

> Of primary concern to the State Bar is the pattern of neglect which is evidenced by the similarity between the misconduct in Mr. Cardenas' previous disciplinary matter and that at issue in this matter. For example, on April 22, 1985, the State Bar of Arizona filed a complaint against Mr. Cardenas alleging that he had: (1) agreed to represent Leo Mercado; (2) received $200.00 from him; (3) failed to take any action towards the representation; (4) avoided contact with Mr. Mercado; and (5) failed to refund the $200.00 he had received. *See* complaint filed on April 22, 1985, in Bar No. 5–0262. The above-referenced allegations were deemed admitted for the reason that Mr. Cardenas failed to answer the complaint

---

**2.** The parties in their briefs did not address the question of disbarment. We allowed the parties to file supplemental briefs on this question be-

fore deciding the appropriate sanction to be imposed.

or obtain an extension of time within which to do so.

\* \* \* \* \* \*

Although the Hearing Committee in Mr. Cardenas' previous disciplinary matter recommended a six-month suspension from the practice of law as the appropriate sanction for the misconduct discussed above, the Disciplinary Commission reduced the sanction to a Judgment of Censure. In addition, the Disciplinary Commission ordered Mr. Cardenas to pay the State Bar $454.90 as and for its cost in that matter. *See* Judgment of Censure filed April 14, 1986 in Bar No. 5–0262.

When Mr. Cardenas failed to pay the $454.90 in costs assessed against him and ignored reminders that his failure to do so could result in the suspension of his license to practice law, the State Bar moved to suspend Mr. Cardenas' license pending payment of the above-referenced costs. The State Bar's Motion was granted and, as a result, Mr. Cardenas was suspended from the practice of law for approximately two months (from November 19, 1986 until January 23, 1987). With respect to this prior violation, we believe the Commission treated respondent very charitably. Rejecting the Committee's recommendation of a six-month suspension, the Commission reduced the sanction to censure. Despite this lenient treatment, respondent neglected to pay the costs assessed against him and was consequently suspended for two months and then reinstated. Respondent, nonetheless, promptly repeated the same pattern of behavior in representing Mr. Harvey. We consider this prior discipline to be an aggravating circumstance weighing strongly against respondent. Rule 54(k)(4), Sup.Ct. Rules.

We note an apparent conflict between this case and *In re Anderson,* 163 Ariz. 362, 788 P.2d 95 (Ariz.1990). Both Anderson and Cardenas were charged with the same type of violations. In *Anderson,* the Commission recommended a three-month suspension; we agreed, noting that Anderson, like this respondent, was not only negligent but had knowingly failed to protect his client's interests. 163 Ariz. at 365, 788 P.2d at 98.

In distinguishing the two cases, it is important to note first that the Commission recommended that this respondent be suspended for six months and one day. The obvious purpose of this was to put the case within the provisions of Rule 71(g), Sup.Ct. Rules, 17A A.R.S., which provides that lawyers suspended for a period of more than six months will not be readmitted except on application and proof of rehabilitation, demonstrated in a reinstatement proceeding. The Commission was obviously and quite properly much more concerned with respondent's misconduct than it had been with Anderson's.

The reason for that concern is apparent from the record. Anderson knowingly failed to act competently in connection with a single matter in which he may have been out of his depth. Respondent, unfortunately, repeatedly displayed this same tendency. Respondent's transgressions are part of a pattern of behavior.

Thus, Anderson's past record was a mitigating circumstance (*Anderson,* 163 Ariz. at 364–365, 788 P.2d at 97–98), while respondent's past record not only provides aggravating circumstances but makes it quite obvious that disbarment is an appropriate sanction for him.

### C. *Restitution*

■ Restitution is a proper sanction for attorney misconduct. ABA *Standards,* Standard 2.8; *see also* the Arizona Rules of the Supreme Court which provide for restitution to a client or a victim for an attorney's negligence or misconduct, 17A A.R.S. Sup.Ct.Rules, Rule 52(a)(7).

The Hearing Committee recommended restitution in the amount of $25,000 plus 10% interest accruing from the date of the Supreme Court order. The Commission recommended that respondent pay $20,000 in restitution with interest at 10% accruing from 25 August 1985. Regarding the amount of restitution, the following transpired at the hearing before the Commission:

MS. BARTON: The reason the hearing committee went with a $25,000 restitution is because Mr. Cardenas stated at the hearing committee session that he felt the case was worth $25,000, which is why he had rejected the $20,000 settlement offer, and he was at that time, in the process of entering into an agreement with Mr. Harvey whereby he was going to pay him restitution in the amount of $25,000, and since Mr. Cardenas felt that $25,000 was more appropriate than $20,000, that is why the hearing committee recommended restitution in the amount of $25,000.

MR. CRUM: In other words, they did not take into consideration the fact it was a contingency contract and that the client would not have netted out 20 or 25,000 even if he got the $25,000 he was demanding?

MS. BARTON: They did not, in that portion of the meeting I attended. I don't know what was discussed during their deliberations and whether they took that into consideration at that time.

The record does not show the nature or seriousness of the client's injury. The offer of settlement for $20,000 is some evidence that the claim might be worth more than $20,000. There was, however, a contingent fee of one-third that the respondent would be entitled to for the settlement of the claim. Considering the existence of a contingent fee, we believe $20,000 is a more appropriate amount.

## VI. DISPOSITION

Restitution to the victim is ordered in the amount of $20,000 with interest at the rate of 10% per annum accruing from 25 August 1985. Costs to the State Bar in the amount of $862 are allowed. *See* Rule 52(a)(7), Sup.Ct.Rules.

Respondent is disbarred.

GORDON, C.J., FELDMAN, V.C.J., and MOELLER and CORCORAN, JJ., concur.