923 P.2d 836

**In the Matter of a Suspended Member of the State Bar of Arizona, Michael James BRADY, Respondent.**

**No. SB–96–0003–D.**

**Disc. Comm. Nos. 91–1753, 92–0011, 92–0605, 92–0758, 92–0789, 92–0979, 92–0932, 92–1009 and 93–0689.**

Supreme Court of Arizona,
En Banc.

Sept. 24, 1996.

Margaret H. Downie, Chief Bar Counsel by Yigael M. Cohen, Phoenix, for State Bar of Arizona.

Rubin Salter, Tucson, for Respondent.

## OPINION

FELDMAN, Chief Justice.

The Disciplinary Commission of the Supreme Court of Arizona (Commission) adopted the recommendation of the hearing officer that Michael James Brady (Respondent) be disbarred from the practice of law and make restitution totaling $12,850 to five clients. We have jurisdiction pursuant to Rule 53(e), Rules of the Supreme Court.

We consider three questions on appeal:

1. Did Respondent violate the Arizona Rules of Professional Conduct?

2. Was Respondent denied due process because he had no opportunity personally to confront the witnesses against him?

3. Are the sanctions recommended appropriate?

## PROCEDURAL HISTORY

This disciplinary proceeding arises out of two consolidated complaints by ten clients. These clients were damaged when Respondent abandoned his practice in 1992. They were damaged also when Respondent violated Ethical Rules (ER) 1.1 (competence), 1.3 (diligence), 1.4 (communication), 1.5 (fees), 1.15 (safekeeping property), 1.16 (declining or terminating representation), 3.3 (candor toward the tribunal), 8.1 (bar admission and disciplinary matters), and 8.4 (misconduct). Rules of Professional Conduct, Rule 42, Ariz. R.Sup.Ct.

Respondent was placed on interim suspension in this matter on September 14, 1992. On July 8, 1993, the State Bar filed a complaint against Respondent. After various motions, notices, and filing of a second formal complaint, Respondent filed his answer and the matters were consolidated.

Hearing officer Dwight M. Whitley, Jr., took testimony and heard argument on July 14, July 15, and November 7, 1994. He issued his report in June 1995, finding Respondent violated the Rules of Professional Conduct and recommending he be disbarred.

## FACTS

Prior to the filing of the complaints, Respondent accepted ten clients, whose cases he mishandled or abandoned when he left the country in May 1992.

COUNT 1—In May 1990, Client 1 retained Respondent to file a Rule 32 petition for post-conviction relief and paid him $5,000 for this representation. Respondent never prepared the petition. He did not communicate with the client and affirmatively misled her by falsely stating a Rule 32 hearing had been tentatively arranged.

COUNT 2—In November 1990, Client 2 retained Respondent to represent him in a criminal matter arising out of an allegation of child molestation. Respondent did not interview relevant witnesses, did not obtain expert testimony on behalf of his client, and did not file appropriate pretrial motions. The client was convicted and faced a prison sentence in excess of thirty-five years. At an expense of $7,000, the client retained new counsel who filed a petition for post-conviction relief based on Respondent's ineffective representation. The petition was granted and the client ultimately was sentenced to probation.

COUNT 3—Client 3 retained Respondent to file a petition for post-conviction relief and paid him $4,250. Respondent did not respond to his client's correspondence or perform the work for which he was retained.

COUNT 4—Client 4 retained Respondent to appeal a federal criminal conviction. While Respondent was successful in having the conviction overturned, the Ninth Circuit Court of Appeals found Respondent filed his opening brief two months late, failed to file an excerpt of record, failed to respond to additional orders of the court, and failed to appear at oral argument.

COUNT 5—Respondent represented Client 5 in a personal injury action. The settlement agreement called for an initial payment of $3,000, with the balance of the settlement to be paid in monthly installments of $100. Respondent received $800 from the initial payment for attorney's fees, and the client was to receive all of the remaining payments. The payments were not forthcoming for nearly two and a half years. When Respondent received the balance of the payments, he falsely told the client the case still had not been resolved and he needed additional fees to collect the balance.

COUNT 6—In July 1991, Client 6 hired Respondent to execute a closing statement establishing distribution of assets in the probate of an estate. Respondent lost the decedent's stock certificates. Instead of communicating this important information to the client, Respondent prepared a false closing statement that failed to dispose of the stock certificates.

COUNT 7—In March 1991, Respondent accepted $1,500 to finalize Client 7's divorce. Despite promising the client he would resolve the case before he left the country, Respondent did not do so. In May 1992, the client received a call from another attorney, advising her that her file had been turned over to him. The client had no prior contact with that attorney and had not been advised that her file was going to be given to him. Also, Respondent had been retained to assist this client in the collection of a debt. Although Respondent filed an action, he failed to have the defendant served. Finally, Respondent failed to return the client's files to her.

COUNT 8—Respondent left the country without advising Client 8 of an upcoming settlement conference in a domestic relations matter. As a result, the client was sanctioned by the court. Further, Respondent failed to appear at the initial trial date and did not complete work on the dissolution action.

COUNT 9—Respondent failed to provide competent representation to Client 9 because he did not provide the court with a psychologist's report or any psychological testimony prior to sentencing. When investigated by the State Bar concerning this lapse, Respondent falsely stated he had attempted to contact the psychologist.

COUNT 10—The United States Court of Appeals for the Ninth Circuit ordered Respondent to show cause why he should not be sanctioned for his failure to prosecute Client 10's criminal appeal. He did not comply with the order to show cause and was fined. The fine was never paid.

## DISCUSSION

### A. Standard of review

In disciplinary proceedings, this court is the ultimate trier of fact and law, requiring clear and convincing evidence of all facts. We give great weight, however, to the hearing officer's factual findings and the Commission's recommendations. *See In re Curtis,* 184 Ariz. 256, 263–64, 908 P.2d 472, 479–80 (1995); *In re Cardenas,* 164 Ariz. 149, 151, 791 P.2d 1032, 1034 (1990). In reaching its decision, this court looks at 1) the duty violated, 2) the lawyer's mental state, 3) the actual or potential injury caused by the lawyer's misconduct, and 4) the existence of aggravating or mitigating factors. *Curtis,* 184 Ariz. at 264, 908 P.2d at 480.

### B. Respondent violated Arizona Rules of Professional Conduct

The Commission found, and we agree, that clear and convincing evidence established Respondent's violations of ER 1.1 (competence), 1.3 (diligence), 1.4 (communication), 1.5 (fees), 1.15 (safekeeping property), 1.16 (declining or terminating representation), 3.3 (candor toward the tribunal), 8.1 (bar admission and disciplinary matters), and 8.4 (misconduct). Furthermore, Respondent violated Rule 51(e), (h) and (i) by wilfully disobeying a court order, failing to furnish information to the State Bar, evading service, and refusing to cooperate with the State Bar.

### C. Respondent's due process rights were not violated

The United States Supreme Court has stated state bar disciplinary proceedings are adversarial and quasi-criminal in nature; therefore, the requirements of procedural due process must be met. *See In re Ruffalo,* 390 U.S. 544, 551, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117 (1968). These requirements include fair notice of the charges made and opportunity for explanation and defense. *Id.* at 550, 88 S.Ct. at 1226.

Respondent claims he was not afforded his constitutional right of due process (which, he asserts, includes the right to confront the witnesses against him) because he was not present at the first two days of the disciplinary hearing in June 1994. The hearings were then continued to November, and Respondent testified at that time, after having the opportunity to review the transcripts.

Respondent's argument fails for several reasons. First, assuming, *arguendo,* that Respondent had a right personally to confront the witnesses, his right to raise this matter was precluded by his failure to object at the disciplinary hearing. *State v. Thompson,* 146 Ariz. 552, 555, 707 P.2d 956, 959 (1985) (holding the right to object to testimo-

ny violating right of confrontation can be waived by failure to object).

■ A fuller answer is Respondent waived his right when, after the State Bar gave notice of the hearing, he failed to appear. *See State v. Aragon*, 135 Ariz. 7, 658 P.2d 807 (1982) (voluntarily absenting oneself from proceedings constitutes a waiver of confrontation rights). Respondent knew formal disciplinary proceedings were pending against him, having received the complaint and signed the return receipt. He filed an answer and retained counsel, and this counsel received all subsequent service, as permitted by Rule 55(b)(4).[1] Although Respondent claims he did not receive any of his attorney's correspondence after he left the country first for Great Britain and later Micronesia, it stretches credulity to believe Respondent did not receive at least one of the seven letters written to him by his lawyer. Even if he did not receive the letters sent by his lawyer, Respondent was required to keep in touch with the lawyer and inform himself of the progress of the case. Rule 51(i).[2] Moreover, Respondent was represented by counsel at the first two days of hearings, and at his request the hearing officer granted a continuance for nearly four months to give Respondent an opportunity to testify personally after reviewing the transcripts of the earlier witnesses.

A similar situation occurred in *In re Lewkowitz*, 70 Ariz. 325, 220 P.2d 229 (1950), in which respondents argued their statutory and due process rights to examine and cross-examine witnesses were violated because the court denied a motion for continuance. Looking at the record, the court decided the continuance was properly denied, as respondents had proper notice of the pending disci-

plinary matter and therefore were not denied the opportunity to appear and defend. Respondents were not denied due process. *Id.* at 334, 220 P.2d at 235. Here, Respondent was given notice of the hearing and had ample opportunity to be present for the first two days but apparently chose not to be. He was then given the continuance his counsel requested and testified on the third hearing day.

Under the facts of this case, we find no due process violation.

## D. The sanctions recommended were appropriate

■ The purpose of disciplining lawyers is to protect the public and maintain the integrity of the administration of justice. *See* The American Bar Association's *Standards for Imposing Lawyer Sanctions* (1986) (*Standards*) 1.1. Although not mandatory, the ABA *Standards* are persuasive as to appropriate sanctions and provide a "useful tool" in deciding the sanction to be applied. *Cardenas*, 164 Ariz. at 152, 791 P.2d at 1035. This court has reaffirmed the usefulness of the *Standards* numerous times. *See In re Mulhall*, 170 Ariz. 152, 822 P.2d 947 (1992); *In re Smith*, 168 Ariz. 357, 813 P.2d 722 (1991); *In re Hiser*, 168 Ariz. 359, 813 P.2d 724 (1991); *In re Gaynes*, 168 Ariz. 574, 816 P.2d 231 (1991).

■ Despite Respondent's arguments to the contrary, we believe the recommendations of the *Standards* are appropriate here. Standard 4.41 states:

Disbarment is generally appropriate when:

(a) a lawyer *abandons the practice* and causes serious or potentially serious injury to a client; or

---

1. Further argument against Respondent's due process claim can be found in the rules. Rule 54(i) states:

   No action taken by the committee on any complaint, or thereafter by the commission, the board, or this court, shall be subject to challenge because of defective or insufficient service if, in fact, the respondent had ample notice of the discipline hearing and full opportunity to be heard. No finding or recommendations made in any proceeding shall be invalidated because of an error in pleading, or *in procedure, or upon any other ground, unless*

*upon review it appears from the entire record, including the evidence, that error has been committed which has resulted or will result in a miscarriage of justice.*
(Emphasis added.)

2. Rule 51(i) states "[e]vading service or any other refusal to cooperate with officials and staff of the state bar, hearing committees or hearing officers" is misconduct. Remaining cognizant of a pending disciplinary proceeding by maintaining contact with one's attorney is required in order to cooperate.

(b) a lawyer *knowingly fails to perform services* for a client and causes serious or potentially serious injury to a client; or

(c) a lawyer *engages in a pattern of neglect* with respect to client matters and causes serious or potentially serious injury.

(Emphasis added.) Respondent's conduct falls within all three of these categories of behavior. Respondent failed to file two Rule 32 petitions for post-conviction relief, potentially subjected one client to a thirty-five year prison term because of his failure to act, did not respond to inquiries with regard to a client's difficulty in being released from prison after his conviction was overturned, and stole $1,100. These acts, taken alone, would be enough to satisfy the requirement of serious injury; together, they demonstrate a "pattern of neglect" with respect to client matters. *See Cardenas,* 164 Ariz. at 152, 791 P.2d at 1035.

**E. Aggravating and mitigating circumstances**

 Respondent has been informally reprimanded twice for the same or similar conduct. Prior discipline is an aggravating circumstance that weighs strongly against the respondent. *See Cardenas,* 164 Ariz. at 152, 791 P.2d at 1035; Rule 54(k)(4). The hearing officer and Commission found no mitigating factors. Nor do we perceive any. That Respondent partially fulfilled his duty to his clients does not mitigate the substantial deficiencies and dishonesty in his performance.

Respondent's repeated derelictions of duty placed his clients in jeopardy of serious injury and caused significant harm. Moreover, he failed to cooperate with the courts and State Bar counsel and showed a continuing disregard for the Rules of Professional Conduct, as well as the trust placed in him by his clients. Respondent is a danger to his clients and a disgrace to the profession. Disbarment is the only appropriate sanction.

## CONCLUSION

We order Respondent be disbarred, pay costs to the State Bar in the amount of $5,491.83, and restitution in the amount of

$5,000 to Client 1, $1,600 to Client 2, $4,250 to Client 3, $1,000 to Client 7, and $1,000 to Client 8.

ZLAKET, V.C.J., and MOELLER, MARTONE and JONES, JJ., concur.